UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRICIA CAMPBELL,

                              Plaintiff,

        -v-

HOME DEPOT U.S.A., INC.,

                              Defendant.

Case No. 03-CV-1421 (KMK) (HBP)

<u>OPINION AND ORDER</u>

<u>Appearances:</u>

Tricia Campbell
Bronx, NY
*Pro Se Plaintiff*

Debra S. Mowray, Esq.
Jami Schultz, Esq.
Morgan, Lewis & Bockius LLP
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

<u>I.  Introduction</u>

        On March 30, 2003, Plaintiff Tricia Campbell filed an employment discrimination action

against Defendant Home Depot U.S.A., Inc. ("Home Depot").  The Complaint alleges that

Plaintiff was the victim of a sexually hostile work environment, was retaliated against for

complaining about the hostile environment, and was wrongfully terminated as a result of her

pregnancy.  (Compl. 1, 4)  On April 1, 2003, the case was referred to Magistrate Judge Henry B.

Pitman for pre-trial case management and dispositive motions.[1]  On May 10, 2004, Defendant

_____

        [1]This case was reassigned to this Court on September 3, 2004.

filed a Motion for Summary Judgment seeking to dismiss Plaintiff's Complaint in its entirety, pursuant to Fed. R. Civ. P. 56.

On February 17, 2005, Magistrate Judge Pitman issued a Report and Recommendation recommending that the Court grant Defendant's Motion with respect to Plaintiff's hostile work environment and pregnancy-based discrimination claims. Magistrate Judge Pitman recommended that the Court deny Defendant's Motion with respect to Plaintiff's retaliation claim. (Magistrate Judge Pitman Am. Report and Recommendation 1-2 ("Am. R&R")) Plaintiff and Defendant both filed objections to the Magistrate Judge's Amended Report and Recommendation.

For the reasons stated below, Defendant's summary judgment Motion is granted in its entirety.

## II.  Facts[2]

### A.  Plaintiff's Employment with and Termination by Home Depot

Plaintiff commenced her employment with Home Depot in September 1999 as a cashier in its New Rochelle, New York store. (Schultz Aff. Ex. A 35-36) Plaintiff was initially employed as a part-time employee and then became a full-time employee on April 13, 2000. (Schultz Aff. Ex. A 36, 42; Pl.'s Aff. of True and Correct Documents in Supp. of Pl.'s Opp'n Mot. Ex. 22 ("Pl.'s Doc. Volume"))

In the spring of 2001, a customer dropped a load of pipe on Plaintiff's foot, resulting in an injury that made it difficult for her to stand for extended periods of time. (Schultz Aff. Ex. A 43-

---

[2]The relevant facts are derived from the Amended Report and Recommendation and the documents submitted by the Parties.

44; Pl.'s Doc. Volume Exs. 9, 10)  At her request, Plaintiff was transferred from her cashier position to a telephone sales position.  (Schultz Aff. Ex. A 43-44; Pl.'s Doc. Volume Ex. 11)

In August 2001, Stephen Ritter, a male colleague, approached Plaintiff and, without her consent, allegedly rubbed her shoulders, neck, and back.  (Schultz Aff. Ex. A 47-48)  Mr. Ritter's conduct was not, however, accompanied by any inappropriate comments.  (Schultz Aff. Ex. A 48)  Plaintiff complained to the store manager, Ray Rockenseis, about Mr. Ritter's conduct.  Mr. Rockenseis advised Plaintiff he would talk to Mr. Ritter about his conduct.  (Schultz Aff. Ex. A 50)  However, after Plaintiff complained to Mr. Rockenseis, Mr. Ritter allegedly engaged in rubbing Plaintiff's back a second time (again without Plaintiff's consent).  (Schultz Aff. Ex. A 50)  Plaintiff again complained to Mr. Rockenseis who suggested that she make a written complaint.  (Schultz Aff. Ex. A 51)  Plaintiff made a written complaint to Mr. Rockenseis who said he would have another talk with Mr. Ritter.  (Schultz Aff. Ex. A 53-54)  Mr. Rockenseis later advised Plaintiff that he had told Mr. Ritter to stay away from her.  (Schultz Aff. Ex. A 54)  Mr. Ritter did not engage in any further inappropriate conduct toward Plaintiff.  (Schultz Aff. Ex. A 55-56)

In October 2001, Mr. Rockenseis transferred out of the New Rochelle store and was replaced by Yvette Williams.  (Weinman Aff. ¶ 5)  In addition, in early October 2001, Plaintiff learned she was pregnant.  (Schultz Aff. Ex. A 58)  Although the Parties disagree on the issue, Plaintiff claims that she advised an assistant store manager, Michael Weinman, of her pregnancy the day after she learned of it.  (Schultz Aff. Ex. A 58)  For the purposes of this motion, the Court shall assume the truth of Plaintiff's contention.  *See Milani v. Int'l Bus. Machs. Corp.*, 322 F. Supp. 2d 434, 442 n.16 (S.D.N.Y. 2004).

In December 2001, the District Manager informed the New Rochelle store manager, Ms. Williams, that the store's payroll must be cut in order to balance the budget. (Weinman Aff. ¶ 7) Defendant used a computer to generate a list of individuals who would be eligible for termination based on their performance and inverse length of service. (Weinman Aff. ¶ 8) Plaintiff's name was on the computer-generated list, having been employed by Defendant for only two years and having received a three out of five on the most recent performance evaluation. (Weinman Aff. ¶ 9) The Store Manager, the Human Resources Manager, and the Assistant Store Manager, then indiscriminately "went down the computer-generated list until [they] had included enough associates to satisfy the necessary reduction in hours." (Supplemental Weinman Aff. ¶ 5) Defendants have offered evidence that Plaintiff was on this list and that it was generated before December 17, 2001, the date she was terminated. (Weinman Aff. ¶ 9-10) Plaintiff has not cited any admissible evidence controverting Defendant's description of how the initial list of employees was generated, nor how her name was selected from that list for termination.

Plaintiff was out of work for one week in early December 2001 due to difficulties with her pregnancy. She returned to work on December 14, 2001. Plaintiff and four other employees were fired on December 17, 2001. (Schultz Aff. Ex. A 91-92; Weinman Aff. ¶ 11) Plaintiff was one of two employees in telephone sales who was terminated. (Weinman Aff. ¶ 12) None of the four other employees who were terminated at that time were pregnant. (Weinman Aff. ¶ 12) Another employee at the New Rochelle store who was pregnant as of December 17, 2001 was not terminated, and is still employed by Defendant. (Weinman Aff. ¶ 13)

### B. Plaintiff's Claims

Plaintiff has asserted three claims against Defendant: (1) that she was subjected to a

hostile work environment as a a result of Mr. Ritter's unwanted touching; (2) that she was retaliated against for having complained about Mr. Ritter's activity and; (3) that Home Depot fired her because she was pregnant.

## III.  Discussion

### A.  Summary Judgment Standard

"Summary judgment shall be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant . . . ." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 253-54 (2d Cir. 2002) (citations omitted).  To defeat Defendant's Motion for Summary Judgment, Plaintiff must make a sufficient showing of proof on each element of her claim for which she bears the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (holding that the moving party is not required "to produce evidence showing the absence of a genuine issue of material fact"); *Adorno v. Lord & Taylor*, No. 97 Civ. 4444, 1999 WL 759995, at *2 (S.D.N.Y. Sept. 27, 1999) (holding that the plaintiff must prove that "there is a reasonable amount of proof supporting the essential elements of [her] case which must be proved at trial").

The Supreme Court has stated that "trial courts should not 'treat discrimination differently from other ultimate questions of fact.'"  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993)).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the

[non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (alterations in original).

A *pro se* plaintiff's allegations are held to a "less stringent standard than formal pleadings drafted by lawyers . . . ." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). *Pro se* plaintiffs are "'entitled to a far more generous reading of their pleadings than would otherwise be afforded to one who is represented by an attorney.'" *Dimps v. Dist. Council 37*, No. 01 Civ. 1735, 2002 WL 206992, at *2 (S.D.N.Y. Feb. 8, 2002) (quoting *Richardson v. Sec. Unit Employees Council 82*, No. 99 Civ. 1021E, 2001 WL 392089, *1 (W.D.N.Y. March 27, 2001)).

### B.  Standard for Reviewing a Magistrate Judge's Report and Recommendation

A district court reviewing a report and recommendation deciding a dispositive motion "'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.'" *Reyes v. Mantello*, No. 00 Civ. 8936, 2003 WL 76997, at *1 (S.D.N.Y. Jan. 9, 2003) (quoting 28 U.S.C. § 636(b)(1)(C)). "'[A] district court need only satisfy itself that there is no clear error on the face of the record.'" *Id.* (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)).

However, under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, parties may submit objections to the magistrate judge's report and recommendation. If a party submits a timely objection to a report and recommendation, the district judge will review the parts of the report and recommendation to which the party objected under a *de novo* standard of review.  *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b) ("The district judge to whom the case is

assigned shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule.").

Here, both Plaintiff and Defendants timely filed objections to Magistrate Judge Pitman's Amended Report and Recommendation. Therefore, the Court shall undertake a *de novo* review of those portions of the report to which specific objections were made. *See United States v. Raddatz*, 447 U.S. 667, 673-74 (1980).

## C. Plaintiff's Objections

Plaintiff objects to Magistrate Judge Pitman's recommendation that the Court grant Defendant's Motion for Summary Judgment as to Plaintiff's claims of hostile work environment and pregnancy-based discrimination on three grounds: (1) the Magistrate Judge wrongfully refused to recognize that fear of losing her job if she refused to accept work assignments is a basis for a hostile work environment claim; (2) the Magistrate Judge used the wrong standard in dismissing Plaintiff's pregnancy-based discrimination claim; and (3) the Magistrate Judge should not believe Defendant's legitimate non-discriminatory explanation for why Plaintiff was fired, and should consider the evidence Plaintiff produced to rebut Defendant's proffered explanation.

### 1. Fear as a Basis for a Hostile Work Environment Claim

Plaintiff does not object to Magistrate Judge Pitman's conclusion that she did not state a cause of action for a sexually hostile work environment based on Mr. Ritter's inappropriate conduct.[3] (Pl.'s Objections to Am. R&R 3) Therefore, the Court has reviewed that conclusion

_____

[3]As Plaintiff acknowledged, "[t]he plaintiff does recognize Judge Pitman's analysis on a sexually hostile environment." (Pl.'s Objections to Am. R&R 3)

for clear error, *Reyes*, 2003 WL 76997, at *1, and, finding none, adopts it. Plaintiff does, however, object to Magistrate Judge Pitman's rejection of her argument that Defendant created a hostile work environment by asking Plaintiff to cover other employee's positions, thereby creating a fear in Plaintiff that she could be fired if she did not comply.

In order to prevail on her claim of a hostile work environment under Title VII, Plaintiff must establish three elements: "'(1) that the harassment was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment, . . . (2) that a specific basis exists for imputing the objectionable conduct to [her] employer, [and]'" *Palomo v. Trs. of Columbia Univ.*, No. 03 Civ. 7853, 2005 WL 1683586, at *14 (S.D.N.Y. July 20, 2005) (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (citation omitted)), (3) that the she was subjected to the harassment because of her membership in a protected class. *See Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998) ("[Plaintiff] must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimina[tion] . . . because of . . . sex.'") (alterations in original) (quoting 42 U.S.C. § 2000e-2(a)(1)); *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) ("A plaintiff must also demonstrate that she was subjected to the hostility *because* of her membership in a protected class." (emphasis added)); *Pronin v. Raffi Custom Photo Lab., Inc.*, 383 F. Supp. 2d 628, 634 (S.D.N.Y. 2005) ("Abusive conduct in the workplace, if not based on a protected class, is not actionable under Title VII . . . . These statutes prohibit discrimination and are not civility codes.").

"The first element of a hostile work environment claim has both an objective and subjective component: 'the misconduct must be severe or pervasive enough to create an

objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive.'" *Petrosino v. Bell Atlantic*, 385 F.3d 210, 221 (2d Cir. 2004) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)). In order to maintain a hostile work environment claim, Plaintiff "'must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were "sufficiently continuous and concerted" to have altered the conditions of her working environment.'" *Alfano*, 294 F.3d at 374 (quoting *Cruz v. Coach Stores, Inc*., 202 F.3d 560, 570 (2d Cir. 2000)); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753 (1998).

Although Plaintiff herself may have perceived the work environment to be abusive, occasionally requesting that Plaintiff cover other employees' positions is not objectively abusive or offensive conduct. A few occasional requests cannot be characterized as pervasive. *See Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 372 (S.D.N.Y. 2005) ("The complained of 'incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief.'") (quoting *Kotcher v. Rosa & Sullivan Appliance Ctr*., 957 F.2d 59, 62 (2d Cir.1992)). Moreover, Plaintiff has not presented any evidence to suggest that any one request to cover a position was "extraordinarily" severe. *But see Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) (holding that, in a profession where obeying line-of-command orders is essential, a single incident of verbal assault in front of plaintiff's subordinates could alter plaintiff's work environment).

To the extent that Plaintiff is claiming protected status as a result of her pregnancy, Plaintiff has not provided evidence that she was asked to cover cashier positions *because* she was

pregnant. In fact, Plaintiff concedes that, "like many other employees, Plaintiff was sometimes asked to cover other positions in the store while she was assigned to the Phone Center."[4] ( Pl.'s Aff. in Supp. of Opp. to Def.'s Mot. for Summ. J. 4 ("Pl.'s Resp.")) When other employees were also asked to cover open positions, Plaintiff cannot now argue that she was subjected to abusive conduct because of her status in a protected class. *See Pronin*, 383 F. Supp. at 634 (declining to find a hostile work environment where plaintiff failed to adduce evidence that hostility was the result of discrimination); *Perez v. Commc'ns Workers of Am. Local 1109*, No. 03 Civ. 3740, 2005 WL 2149204, at *11 (E.D.N.Y. Sept. 6, 2005) (declining to find discriminatory animus where plaintiff failed to show that other similarly situated employees were treated more favorably); *Alfano*, 294 F.3d at 378 (dismissing allegations of sexual discrimination where there was no evidence that supervisor's dislike for employee was motivated by sex). In other words, the record is barren of <u>any</u> evidence that Defendant's request of Plaintiff (and other employees)

---

[4] Plaintiff has not proffered any evidence that she was a member of a protected class under the Americans with Disabilities Act ("ADA") as a result of her foot injury. However, because Plaintiff is *pro se*, the Court has considered for her the possibility that she could have brought a claim under the ADA. *See Fleming v. United States*, 146 F.3d 88, 90 (2d Cir.1998). Plaintiff has not proffered sufficient evidence to prove a prima facie case. To do so, Plaintiff "must prove that: 1) the defendant is covered by the ADA; 2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; 3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and 4) plaintiff suffered an adverse employment action because of [her] disability or perceived disability." *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005).

A disability is: "(A) physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Plaintiff has not provided any evidence that she had, at the relevant time, an impairment which substantially limited one or more life activities or that Defendant regarded her as having such an impairment. Therefore, Plaintiff has not substantiated a putative claim that she was disabled under the ADA, and cannot claim that she has protected status as a result of her foot injury.

to cover other assignments was even remotely based on her gender or pregnancy status.

Plaintiff argues that she feared losing her job if she refused the assignments.[5]  Fear of

[5]In her objections to the Amended Report and Recommendation, Plaintiff argues – for the first time – that she not only feared losing her job if she refused the reassignments, but also feared injuring her baby if she accepted those assignments.  Plaintiff alleges in her objections that she was carrying a "high risk pregnancy" beginning in October 2001.  (Pl.'s Objections to Am. R&R 3-4 & Ex. 1)

The Court declines to consider this additional argument because such consideration would deny Defendant an opportunity to respond and renders the summary judgment proceedings before Magistrate Judge Pitman duplicative.  *See Amadasu v. Rosenberg*, No. 03 Civ. 6450, 2005 WL 954916, at *1 (S.D.N.Y. Apr. 26, 2005) ("'While there may be cases in which the receipt of further evidence is appropriate, there are substantial reasons for declining to do so as a general matter.  First, permitting such piecemeal presentation of evidence is exceptionally wasteful of the time of both the magistrate and district judges, the former having been compelled to write an arguably useless report based on less than the universe of relevant evidence and the latter being deprived of the benefit of the magistrate judge's considered view of the entire record.  Second, opposing parties would be put to the burden of proceedings which, to a considerable degree, would be duplicative.  Third, there would be instances in which parties would be encouraged to withhold evidence, particularly evidence which might be embarrassing as well as helpful on the merits, in the expectation of using it before the district judge only if they failed to prevail before the magistrate judge on a more abbreviated showing.  Finally, the routine consideration of evidence in support of objections which could have been presented before the magistrate judge would reward careless preparation of the initial papers.'") (quoting *Morris v. Amalgamated Lithographers of Am., Local One*, 994 F. Supp. 161, 163 (S.D.N.Y. 1998)); *see also Morgan v. Barnhart*, No. 04 Civ. 6024, 2005 WL 2338709, at *1-2 (S.D.N.Y. Sept. 26, 2005); *Hughes v. JP Morgan Chase & Co.*, No. 01 Civ. 6087, 2004 WL 1403337, at *3 n.3 (S.D.N.Y. June 22, 2004); *Dennehy v. Frambes*, 385 F. Supp. 2d 121, 124 (D. P.R. 2005).

In any event, the argument fails on the merits.  Reconciling the dispute about when Defendant learned of her pregnancy in favor of Plaintiff, Plaintiff was in a protected category as of October 2001.  However, there is no evidence that Defendant asked Plaintiff to cover open positions because of her protected status or that Plaintiff complained to Defendant that the reassignments endangered her pregnancy.  In fact, not only does Plaintiff concede that she was reassigned *along with* other employees, but she also states in her deposition that when she did complain to her supervisor about the reassignments, she complained because she "can't be on [her] foot," not because she was pregnant.  (Schultz Aff. Ex. A 81)

In her deposition, Plaintiff stated that she was absent from work from December 6 through 12 because of problems in connection with her pregnancy.  (Schultz Aff. Ex. A 65) Plaintiff also referenced in her deposition a doctor's note that she was supposed to give to her supervisor "because [she] was very sick."  (Schultz Aff. Ex. A 65)  Later, in her Objections to the Amended Report and Recommendation, Plaintiff clarified that she had received that note from her doctor on December 11, 2001, three days before she returned to work, and six days before

losing one's job, without other evidence that action was taken because of membership in a protected class, is not enough to sustain a hostile work environment claim. Plaintiff does not argue that she was given these reassignments because she was pregnant. Furthermore, Plaintiff concedes that other employees were given the same assignments. As such, Defendant's Motion for Summary Judgment is granted as to Plaintiff's hostile work environment claim.

### 2. *McDonnell Douglas* Framework

Plaintiff objects to the Magistrate Judge's dismissal of her pregnancy-based discrimination claim. Plaintiff asserts that the wrong standard was applied in determining whether or not she carried her burden of persuasion such that she should survive summary judgment. Specifically, Plaintiff argues that, once she established a prima facie case of discrimination, she met her burden and the Court's inquiry should cease. (Pl.'s Objections to the Am. R&R 5-6) The Court reviews this claim *de novo*. Although Plaintiff presents a coherent argument, her understanding of the law on this issue is mistaken.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court established "an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases." *St. Mary's Honor Ctr.*, 509 U.S. at 506. Under *McDonnell Douglas* and its progeny, the plaintiff has the ultimate burden of proving discrimination, regardless of whether or not the defendant offers evidence of a legitimate reason

---

she was terminated. (Pl.'s Objections to Am. R&R Ex. 1) The note stated that Plaintiff "now has a high risk pregnancy" and "needs to be on light dutie [sic]." (Pl.'s Objections to Am. R&R Ex. 1) In her deposition, Plaintiff stated that she needed to be on light duty because of her foot, not because of her pregnancy. (Schultz Aff. Ex. A 139) Therefore, there was no evidence before Magistrate Judge Pitman – and there is no evidence in the record now – that Defendant knew of Plaintiff's high risk pregnancy at the time she was asked to cover other positions, or that covering those positions constituted activity that was dangerous to Plaintiff's pregnancy.

for the adverse employment action at issue. *See Reeves*, 530 U.S. at 143; *St. Mary's Honor Ctr.*, 509 U.S. at 506; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981); *Calabro v. Westchester BMW, Inc.*, 398 F. Supp. 2d 281, 288 (S.D.N.Y. 2005) (holding that plaintiff ultimately has the burden of proving discriminatory animus on behalf of employer to survive summary judgment).

Production of evidence under *McDonnell Douglas* has three steps: First, the plaintiff must establish a prima facie case of discrimination. *Reeves*, 530 U.S. at 142. Second, the defendant may then produce evidence that the plaintiff was terminated for a legitimate, nondiscriminatory reason. *Id.* ("This burden is one of production, not persuasion; it 'can involve no credibility assessment.'") (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 509). Third, if the defendant produces evidence of a legitimate reason for the plaintiff's termination, the plaintiff must rebut the reason with evidence that the defendant acted with a discriminatory motive. *See Reeves*, 530 U.S. at 143 ("Although the intermediate evidentiary burdens shift back and forth under this framework, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with plaintiff.'") (quoting *Burdine*, 450 U.S. at 253); *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 401 (2d Cir. 1998) (holding that at summary judgment stage, plaintiff must establish a genuine issue of material fact regarding whether the employer's true motive was discriminatory).

A plaintiff may meet her ultimate burden by persuading the court that the Defendant's proffered explanation is only a pretext and that Plaintiff was indeed terminated for discriminatory reasons. "[T]he trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's

explanation is pretextual.'" *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 255 n.10).
Here, Plaintiff has not met her ultimate burden.

### a. Prima Facie Case

Plaintiff objects to the Magistrate Judge's refusal to disbelieve Defendant's proffered
reason for termination. The Court will begin by reviewing the evidence Plaintiff presented in
support of her prima facie case.

Plaintiff brings a Title VII pregnancy-based discrimination claim. Under Title VII,
Plaintiff must prove the following four elements in order to state a prima facie case of
employment discrimination based on pregnancy: "(1) she is a member of a protected class; (2)
she satisfactorily performed the duties required by the position; (3) she was discharged; and (4)
her position remained open and was ultimately filled by a non-pregnant employee." *Quaratino v.
Tiffany & Co.*, 71 F.3d 58, 64 (2d. Cir. 1995) (internal citations omitted). "Alternatively, a
plaintiff may satisfy the fourth requirement by showing that the discharge occurred in
circumstances giving rise to an inference of unlawful discrimination." *Id.*

Plaintiff presented evidence satisfying the first three elements of the prima facie case for
pregnancy-based discrimination. As to the first element, Plaintiff became pregnant in October
2001, placing her in protected status. (Schultz Aff. Ex. A 58) As to the second element, Plaintiff
was "Cashier of the Month" in March 2001 and received a satisfactory review which included a
$75.00 bonus, suggesting that she satisfactorily performed the duties of her position. (Pl.'s
Resp.) *See also de la Cruz v. New York City Human Res. Admin. Dept. of Soc. Servs.*, 82 F.3d
16, 20 (2d Cir. 1996) ("To satisfy the second element of the test, [plaintiff] need not demonstrate
that [her] performance was flawless or superior. Rather, [she] need only demonstrate that [she]

'possesses the basic skills necessary for performance of the job.'") (quoting *Powell v. Syracuse Univ.*, 580 F.2d 1150, 1155 (2d Cir. 1978)). As to the third element, Plaintiff was terminated on December 17, 2001. (Schultz Aff. Ex. A 91-92; Weinman Aff. ¶ 11)

As to the fourth element, Plaintiff submitted affidavits from two Home Depot employees (Ian Doyen and Robert Williams) in which they discussed why Plaintiff was terminated and whether she was replaced. However, these affidavits are inadmissible because they are not based on first-hand knowledge. "Rule 56(e)'s requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." *Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d Cir. 2004), *superseded in part by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (amending 42 U.S.C. § 1981).

Mr. Ian Doyen, a Home Depot employee since 1999, stated: "Tricia Campbell was replaced after she was terminated unlawfully from the Phone Center." (Doyen Aff. ¶ 14) Mr. Robert Williams, a former Home Depot employee, stated: "Home Depot is always hiring because employees are always leaving for various reasons. Therefore, they have to hire to fill vacancies." (Williams Aff. ¶ 9)

Neither Mr. Doyen nor Mr. Williams stated any basis from which the Court can infer that they have first-hand knowledge of the facts contained in their Affidavits. Although Mr. Doyen is employed at Home Depot, he is not employed in the department where Plaintiff worked and does not have supervisory responsibilities. Mr. Williams was terminated from Home Depot in

September 2001 – three months before Plaintiff was terminated.[6]  (Williams Aff. ¶ 3)

Additionally, even if Mr. Doyen and Mr. Williams had first-hand knowledge of the events, which they do not, Plaintiff must show more than the fact that Defendant has hired employees since Plaintiff was discharged.  Plaintiff must show that *her* position was replaced by a *non-pregnant* person.[7]  *See Burdine*, 450 U.S. at 254; *McDonnell Douglas Corp.*, 411 U.S. at 802; *Kerzer*, 156 F.3d at 401 (quoting *Quaratino*, 71 F.3d at 64).

As to the alternative method of proving the fourth element, Plaintiff has not proffered admissible evidence that could give rise to an inference that she was terminated because of her pregnancy.  At her deposition, Plaintiff was asked whether she had any evidence that she had been fired because of her pregnancy, and she replied, "No, I don't."  (Schultz Aff. Ex. A 104)  When asked what her pregnancy discrimination claim was based upon, she responded that she couldn't recall.  (Schultz Aff. Ex. A 104)  Thus, Plaintiff has failed to submit any admissible evidence regarding whether her position remained open and was ultimately filled by a non-pregnant employee.

In her opposition to Defendant's Motion for Summary Judgment, Plaintiff argues as proof of discriminatory motive the fact that Mr. Weinman did not think it was important to share her pregnancy status with anyone.  She states that, had Mr. Weinman shared this information,

_____

[6]In her Objections to Judge Pitman's Report, Plaintiff argues that Mr. Williams had first-hand knowledge regarding her termination from answers submitted to Plaintiff's interrogatories by Defendant's employees.  (Pl.'s Objections to Am. R&R 9)  That, by definition, is second-hand knowledge.

[7]Even if the Affidavits were admissible for the purpose of showing discriminatory intent, as discussed below, the Defendant has offered a legitimate, non-discriminatory reason for her termination.  Plaintiff has not rebutted this reason with any admissible evidence.

"Plaintiff would have been protected." This argument misunderstands the law. Plaintiff could still have been lawfully terminated from Home Depot even if everyone knew she was pregnant as long as she was not terminated because of her pregnancy. *Cf. Brown v. Henderson,* 257 F.3d 246, 255-56 (2d Cir. 2001) (concluding that plaintiff had not shown that cruel and vulgar treatment she suffered was based on sex where evidence demonstrated that it was instead based on plaintiff's union activity). If anything, the fact Mr. Weinman did not share Plaintiff's pregnancy status with anyone undermines Plaintiff's argument that there was discriminatory animus. By not sharing the information with anyone, Defendant arguably reduced the possibility that the decision to terminate Plaintiff was based on discriminatory reasons. More importantly, there was another pregnant Home Depot employee in the store who was not terminated when Plaintiff was, a fact undisputed by Plaintiff. (Def.'s Mem. 14)

Plaintiff also argues that the fact Mr. Weinman made no comment in response to learning that Plaintiff was pregnant is evidence of discriminatory animus. Defendant is not required to provide Plaintiff with favorable treatment because she is pregnant. Not commenting on Plaintiff's pregnancy, even if impolite, is not discriminatory. To the contrary, had Mr. Weinman or others involved in the decision to terminate Plaintiff made discriminatory comments in response to the news that Plaintiff was pregnant, those comments could potentially support an inference of discrimination. *See Kerzer*, 156 F.3d at 399 (drawing inference of discriminatory motive when, combined with other factors, manager stated "that an employer could easily get away with discharging a pregnant employee, by stating that the position was eliminated," and that "pregnancy was a sign that [plaintiff] was lazy.") (internal quotations omitted); *see also Calabro*, 398 F. Supp. 2d at 285, 290-91 (drawing an inference of discriminatory motive where, among

other things, manager "threw his hands up in the air and said, 'Oh Great, [plaintiff] is pregnant,'" and two other managers "'groaned' in dismay" upon learning plaintiff was pregnant (internal citations omitted)).  But there are no allegations of such comments in this case.  *See Foster v. Livingston-Wyoming ARC*, No. 02 Civ. 6597T, 2004 WL 1884485, at *4 (W.D.N.Y. Aug. 23, 2004) (refusing to draw an inference of discriminatory motive where there is no allegation "that any of defendant's employees ever made a disparaging or discriminatory remark about women, pregnant women, or the plaintiff").

Plaintiff has not proffered sufficient evidence to prove the fourth element of her prima facie case.  Therefore, the Court need not proceed with the *McDonnell Douglas* analysis. However, even if the Court were to assume that Plaintiff had satisfied all four elements of the prima facie test, the Defendant has offered a legitimate, non-discriminatory reason for her termination, and Plaintiff has not rebutted the reason.

### b.  Defendant's Reason for Discharge

Defendant asserts that it discharged Plaintiff "pursuant to a reduction in force at the New Rochelle store which was necessitated by the fact that, in certain departments, the actual number of total associate work hours had exceeded the number of work hours budgeted."  (Def.'s Mem. 14)  According to Defendant, Plaintiff's supervisors were instructed to terminate employees in certain departments in order to "bring actual hours in line with budgeted amounts."  (Weinman Aff. ¶ 7)  In order to do that, Plaintiff's supervisors "used a computer program to generate a list of associates eligible [for termination]."  (Weinman Aff. ¶ 8)  The list was based on "performance and inverse length of service."  (Weinman Aff. ¶ 8)  Plaintiff's name appeared on the list "based upon her two years of service and performance rating of three out of a possible

five." (Weinman Aff. ¶ 9)  Plaintiff's supervisors then determined the associates who would be

discharged.  (Supplemental Weinman Aff. ¶ 5)  They did this by selecting the first associate on

the non-discriminatory list and each subsequent associate in order of appearance on the list, until

they had included enough associates to satisfy the necessary reduction in hours.  (Supplemental

Weinman Aff. ¶ 5)  Plaintiff was among those associates on the list who were chosen to be

terminated.  Thus, Defendant has produced evidence of a legitimate, non-discriminatory reason

for discharging Plaintiff.

### c.  Pretext for Pregnancy Discrimination

Once Defendant tenders evidence of a legitimate, non-discriminatory reason for

Plaintiff's termination, Plaintiff must establish that Defendant's proffered reason was not the true

reason for her discharge.  She may do so by relying upon the evidence establishing her prima

facie case or by presenting new evidence.  None of the evidence Plaintiff produced in support of

her prima facie case rebuts Defendant's proffered legitimate reason.  Mr. Doyen's statement in

his affidavit that "Home Depot is lying about a computer picking Tricia Campbell," (Doyen Aff.

¶ 14), is not admissible because he does not state any reason for the Court to infer that it is based

on personal knowledge.  Indeed, Mr. Doyen is a sales associate with no supervisory

responsibilities.  (Doyen Dep. 11)  Therefore, he has no knowledge of the reasons behind

Plaintiff's termination.  The same is true for Mr. Williams, as he was not even employed at

Home Depot when Plaintiff was terminated.  (Supplemental Weinman Aff. ¶ 3)

Plaintiff also attempts to rebut Defendant's proffered legitimate reason by asserting that,

even if the computer did generate the list, it did not take into consideration the race and

pregnancy status of Home Depot employees.  (Pl.'s Objections to Am. R&R 7-8)  Plaintiff

further asserts that Defendant did not use a computer to generate a list of associates eligible for termination, but that three supervisors made the selection. (Pl.'s Objections to Am. R&R 7-8) These assertions are not evidence of discriminatory motive for two reasons. First, the computer-generated list was based on a formula comprised of objective criteria unrelated to gender – specifically number of years of service and performance ratings. Plaintiff does not allege discrimination in her performance evaluation. Therefore, the computer-generated list is non-discriminatory. *See Ferraro v. Kellwood* Co., No. 04 Civ. 6413, — F.3d —, 2006 WL 540340, at *3 (2d Cir. Mar. 7, 2006) (affirming summary judgment for defendant on discriminatory termination claim where plaintiff failed to offer any evidence demonstrating the falsity of defendant's stated reason that plaintiff was terminated because her division was merged into another division as a result of declining sales volume, for which plaintiff was at least partially responsible); *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 717 (2d Cir. 1994) (finding that employer proffered a legitimate, non-discriminatory business reason for terminating plaintiff where termination was based on a "business-justified, company-wide reduction in its work force in response to changes in business emphasis and economic necessities" and employee was selected for termination by "non-discriminatory guidelines"). Second, Defendant provided admissible evidence in the form of affidavits submitted by people with first-hand knowledge, that supervisors "went down the computer-generated list until [they] had enough associates to satisfy the necessary reduction in hours." (Supplemental Weinman Aff. ¶ 5) Therefore, the method by which the supervisors selected employees from the list for termination was also non-discriminatory. Plaintiff has not offered any evidence to rebut Defendant's legitimate, non-discriminatory reason, and therefore, has not established a prima facie case for pregnancy-based

discrimination.

     D.  Defendant's Objections

Defendant objects to the Magistrate Judge's recommendation to deny Defendant's

Motion for Summary Judgment as to Plaintiff's retaliation claim.  Defendant's objection is based

on three grounds:  (1) the Report and Recommendation improperly disregards Plaintiff's

deposition testimony; (2) the Report and Recommendation improperly imputes "general

corporate knowledge" to Defendant regarding Plaintiff's protected conduct; and (3) Defendant

properly addressed the second and third prongs of the *McDonnell Douglas* framework in its

Reply to Plaintiff raising new arguments in her response.

     1.  *McDonnell Douglas* Framework

The *McDonnell Douglas* burden-shifting framework applies to Plaintiff's retaliation

claim.  *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) ("[A]

retaliation claim follows the familiar burden-shifting framework developed to evaluate

allegations of disparate treatment.")

     a.  Prima Facie Case

Plaintiff must first establish a prima facie case of retaliation in violation of Title VII.  To

do so, Plaintiff must prove: "(1) participation in a protected activity known to the defendant; (2)

an employment action disadvantaging the plaintiff; and (3) a causal connection between the

protected activity and the adverse employment action."  *Feingold v. New York*, 366 F.3d 138,

156 (2d Cir. 2004) (quotations omitted).

As to the first element, for purposes of this Motion, Defendant concedes that Plaintiff's

complaint to the store manager, Mr. Rockenseis, concerning Mr. Ritter's alleged improper sexual

harassment constituted protected activity.  (Def.'s Mem. 9-10)  Defendant, however, argues that Plaintiff has not established that Home Depot or Yvette Williams, the store manager at the time Plaintiff was terminated, knew of Plaintiff's complaints to Mr. Rockenseis.  (Def.'s Objections to Am. R&R 3)  Mr. Rockenseis had transferred out of the New Rochelle store in October 2001 – two months before Plaintiff was terminated.

Whether or not the individual employees who decided to terminate Plaintiff knew of her complaint is immaterial to resolving the knowledge requirement.  "Neither [the Second Circuit] nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity."  *Gordon v. New York Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000); *see also Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (finding that by complaining to company officer and maintaining complaint throughout internal investigation, plaintiff had communicated complaint to manager); *Alston v. New York City Transit Auth.*, 14 F. Supp. 2d 308, 310 (S.D.N.Y. 1998) (finding that, where plaintiff filed and maintained an internal complaint, she need not show that individual decision makers knew about the complaint); *cf. Tesser v. Bd. of Educ.*, 190 F. Supp. 2d 430, 439-40 (E.D.N.Y. 2002) (refusing to second-guess jury's credibility finding regarding whether manager had knowledge of plaintiff's participation in a protected activity); *Montanile v. Nat'l Broad. Co.*, 211 F. Supp. 2d 481 (S.D.N.Y. 2002) (requiring individual knowledge in the context of proving the third element of the prima facie case, but not the first element of participation in a protected activity).  Here, Plaintiff complained orally and in writing to her manager at the time, Mr. Rockenseis.  (Schultz Aff. Ex. A 50-51)  Those complaints are sufficient to prove the first element.

As to the second element, it has never been clear during this litigation what adverse employment action Plaintiff claims she suffered.  In her Complaint, Plaintiff stated:  "[T]he defend[a]nt's termination reason is a pretext to cover Unlawful Harassment and discrimination and Retaliation."  (Compl. ¶ 8)  In her sworn charge of discrimination to the Equal Employment Opportunity Commission ("EEOC"), Plaintiff more generally stated:  "I was unlawfully discriminated against and denied equal employment based upon my pregnancy and my complaints of unlawful sexual harassment."  (Pl.'s Aff. in Support of EEOC Charge of Discrimination ¶ 17)  However, Plaintiff later stated in her deposition that she was basing her retaliation claim solely on the fact that she got the "runaround" from Home Depot employees a couple of months after she was terminated when she called to complain about her termination.  (Pl.'s Dep. 109-10)  At another point in her deposition, Plaintiff said under oath that she believed she was terminated because of her pregnancy status.  (Schultz Aff. Ex. A 104)

If Plaintiff's retaliation claim is based upon her deposition testimony, then there is no evidence that she suffered an adverse employment action, which is defined as a "materially adverse change in the terms and conditions of employment."  *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999) (finding that severe, unchecked, retaliatory co-worker harassment constitutes adverse employment action).  Plaintiff has not proffered any authority, and the Court is unaware of any authority, explaining how an allegedly post-termination "runaround" by Defendant constitutes a "materially adverse change in the terms and conditions of employment."  Absent any evidence of adverse employment action, Plaintiff's claim fails on the second element of the prima facie case.

Although Plaintiff's *pro se* Complaint and EEOC charge do not explicitly state that she

was terminated in retaliation for complaining about sexual harassment, "courts must construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002) (quotations omitted). "This is especially true when dealing with *pro se* complaints alleging civil rights violations." *Id.* In her EEOC charge, Plaintiff asserted that she complained to Defendant about unsolicited sexual harassment in August 2001, informed Defendant that she was pregnant in October 2001, and took sick leave in December 2001 because of complications associated with her pregnancy. (EEOC Charge of Discrimination 2-3) Plaintiff further contended that, shortly after her return from sick leave, she was terminated, while non-pregnant employees were not. (EEOC Charge of Discrimination 3)

Thus, construing Plaintiff's Complaint and EEOC charge broadly, Magistrate Judge Pitman drew the fair inference that Plaintiff alleged that she was terminated in retaliation for her complaints about sexual harassment. However, "a *pro se* plaintiff must still establish genuine issues of material fact in order to survive a motion for summary judgment. When alleging a violation of the civil rights statute, even a *pro se* litigant must make 'specific allegations of fact indicating a deprivation of rights . . . .'" *Moore v. McGinnis*, No. 01-CV-6588, 2004 WL 2958471, at *5 (W.D.N.Y. Dec. 20, 2004) (quoting *Barr v. Adams*, 810 F.2d 358, 363 (2d Cir. 1987)). "A *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Id.* (quoting *Lee v. Coughlin*, 904 F. Supp. 424, 429 (S.D.N.Y. 1995)).

Therefore, Plaintiff must still prove the third element of the prima facie case – which is a causal connection between her protected activity and the alleged retaliation. Causation can be proved either: "(1) indirectly, by showing that the protected activity was followed closely by

discriminatory treatment, or through other circumstantial evidence . . .; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by defendant." *Gordon*, 232 F.3d at 117. Plaintiff has not offered any direct evidence of retaliatory animus against her by or on behalf of the Defendant.

As for indirect evidence, it is here that lack of knowledge of protected activity on the part of the employees responsible for the alleged adverse employment action may be relevant "as some evidence of a lack of a causal connection." *Gordon*, 232 F.3d at 117. Where there is no proof of direct knowledge about a plaintiff's protected activity, knowledge can be inferred from circumstantial evidence or from evidence that "an agent is acting explicitly or implicitly upon the orders of a superior who has the requisite knowledge." *Id*. Here, there is no evidence to suggest that Ms. Williams, Mr. Rockenseis's replacement, had any knowledge of Plaintiff's complaints about sexual harassment. In fact, Plaintiff admitted under oath that she does not know if Ms. Williams knew of her complaints. (Schultz Aff. Ex. A 110) Furthermore, Plaintiff does not allege that Mr. Weinman or Ms. McEnery knew of her complaints to Mr. Rockenseis. Additionally, Ms. Williams was not a subordinate of Mr. Rockenseis's to whom knowledge can be imputed. Absent any evidence to support an inference that Ms. Williams knew of Plaintiff's complaints, Plaintiff cannot rely on circumstantial evidence of knowledge as evidence of causation.

Thus, Plaintiff may only rely upon temporal proximity to prove causation. Plaintiff was terminated approximately four months after she engaged in protected activity. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case

uniformly hold that the temporal proximity must be 'very close.'" *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citing *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)).

"[The Second Circuit] has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman-Bakos v. Cornell Co-op Extension*, 252 F.3d 545, 554 (2d Cir. 2001). Moreover, courts within the Second Circuit are divided as to whether a four-month gap is close enough. *See Rivera v. Potter*, 03 Civ. 1991, 2005 WL 236490, at *7 (S.D.N.Y. Jan. 31, 2005) (one-month gap insufficient where plaintiff failed to proffer any evidence that his supervisors were aware of his protected activity); *Reuland v. Hynes*, 01 Civ. 5661, 2004 WL 1354467, at *11 (S.D.N.Y. June 17, 2004) (four-and-one-half-month gap sufficient to sustain inference of causation); *Cobian v. New York City,* 99 Civ. 10533, 2000 WL 1782744, at *18 (S.D.N.Y. Dec. 6, 2000) (four-month gap too long to sustain inference of causation); *Alston*, 14 F. Supp. 2d at 312-13 (one-month gap sufficient to sustain an inference even where defendants denied knowledge of plaintiff's protected activity). However, it bears noting that, in *Breeden*, *supra*, the Supreme Court favorably cited two circuit court decisions which held that a three to four month gap between the plaintiff's protected activity and defendant's alleged retaliation was insufficient to draw an inference of causation. *Breeden,* 532 U.S. at 273-74 (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4-month period insufficient)).

Here, the facts in a light most favorable to the Plaintiff are: there was a four-month gap

between her protected activity and termination, and that Plaintiff has admitted that she does not know whether Ms. Williams had knowledge of Plaintiff's protected activity.  (Schultz Aff. Ex. A 110)  There also is no evidence that the decision-making supervisors who terminated Plaintiff (and the three other employees) knew about Plaintiff's protected activity.  Based on these facts, there is a strong argument that there is insufficient evidence to infer a causal connection between Plaintiff's protected act and her termination.  However, even if an inference of unlawful retaliation could be drawn from this evidence, it would, at best, only make out Plaintiff's initial burden of establishing a prima facie case.  Under *McDonnell Douglas*, however, Defendant is permitted to produce evidence of a legitimate business reason for Plaintiff's termination.

### b.  Defendant's Reason for Discharge

In its Reply Memorandum of Law in Further Support of Defendant's Motion for Summary Judgment submitted to Magistrate Judge Pitman ("Def.'s Reply Mem."), Defendant presented a legitimate, non-discriminatory reason for discharging Plaintiff, namely, that Plaintiff was terminated as part of a reduction in force and was selected through non-discriminatory methods.  (Def.'s Reply Mem. 5)  This is the very same reason Defendant offered in connection with the pregnancy-based discrimination claim.  Defendant raised this issue for the first time in its Reply Memo because it had not read the Plaintiff to allege that her termination was retaliatory.

On the one hand, Defendant cannot argue that Plaintiff never raised the issue of retaliatory termination prior to her Response because Plaintiff suggested, albeit in conclusory fashion, in her Complaint and her charge to the EEOC that her termination was retaliatory. (Compl. 3-4; Pl.'s Aff. in Support of EEOC Charge of Discrimination ¶ 17)  On the other hand, Plaintiff later stated in her deposition testimony that her allegation of retaliation was limited to

post-termination acts by Defendant. (Schultz Aff. Ex. A 109-10) Moreover, Plaintiff also testified that she believed that she was terminated because of her pregnancy status. (Schultz Aff. Ex. A 104) Consequently, as of the time the Summary Judgment Motion was briefed, it was not unreasonable for Defendant to believe that Plaintiff was not alleging retaliatory termination, even if the claim was suggested in her Complaint. But later, in her Response to Defendant's Motion, Plaintiff made a one-line reference to her termination as proof of a causal relationship between her protected activity and an adverse employment action. (Pl.'s Resp. to Summ. J. Mot. 9) Thus, when Plaintiff, in direct contradiction to her deposition testimony, raised the possibility that she believed her termination was retaliatory, Defendant necessarily responded.

"'Reply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party.'" *Bayway Ref. Co. v. Oxygenated Mktg. and Trading A.G.*, 215 F.3d 219, 226-27 (2d Cir. 2000) (quoting *Litton Idus. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F. Supp. 1220, 1235 (S.D.N.Y. 1991)); *see also Desimone v. JP Morgan/Chase Bank*, 02 Civ. 7039, 2004 WL 2978011, at *11 n.5 (S.D.N.Y. Dec. 22, 2004). Under the circumstances here, Defendant's reply papers should be considered. While a court is obligated to liberally construe a *pro se* plaintiff's complaint, a defendant should be given some opportunity to defend against a plaintiff's shifting interpretation of that complaint. Here, even though Plaintiff initially construed her claim to include her termination, Defendant understandably viewed Plaintiff's own sworn deposition testimony as <u>limiting</u> the retaliation claim, and responded accordingly.

Because the post-termination "runaround" claim is meritless on its face, and because by definition it did not implicate the decision to terminate Plaintiff, Defendant had no reason to

invoke the *McDonnell Douglas* burden-shifting framework.  However, once Defendant became aware of Plaintiff's shift in her claim, Defendant properly cited the same legitimate business reason for Plaintiff's termination as it had relied upon in responding to Plaintiff's claim of pregnancy-based termination.

While the Magistrate Judge properly noted that *pro se* Plaintiff would not assume she could seek leave to file a sur-reply, nothing prevented a request of Plaintiff to file a sur-reply.  In any event, no sur-reply was necessary, nor was Plaintiff in any way prejudiced by Defendant's invocation of its opportunity to produce evidence of a legitimate reason for Plaintiff's termination, because Plaintiff already had an opportunity to address that very same evidence when proffered by Defendant in connection with the pregnancy-based discrimination claim.[8] Thus, all concerned were given a sufficient record upon which to evaluate Defendant's Summary Judgment Motion.  Here, in connection with the pregnancy-based termination claim, the Magistrate Judge properly concluded that Defendant "offered admissible evidence that Plaintiff was terminated in order to reduce labor costs . . . and that Plaintiff was selected by a computer program that identified employees for termination on the basis of their length of service and performance reviews."  (Am. R&R 30-31)  Thus, his conclusion that this evidence "more than satisfies Home Depot's burden at the second step of the *McDonnell Douglas* analysis" (Am. R&R 31) applies to Plaintiff's retaliation claim, as it did to Plaintiff's hostile work environment claim.

_____

[8]Moreover, Plaintiff has been given another opportunity to rebut Defendant's assertion of a legitimate reason for her termination in connection with the briefing of the Parties' objections to the Amended Report and Recommendation, and has failed to establish a pre-text, or to point to additional evidence in the record that would permit her to meet her ultimate burden of persuasion.

### c. Pretext for Retaliatory Discharge

Plaintiff must rebut Defendant's reason for discharge with evidence that it is not Defendant's true reason. Neither Plaintiff's assertions in her Complaint and her charge to the EEOC, nor her conclusory statements in her Response to Defendant's Motion comes close to refuting Defendant's explanation that she was identified for termination by a computer program and selected from that list for non-discriminatory reasons. Both the four-month gap between her protected activity and her termination, and the lack of evidence that the employees making the termination decision had knowledge of Plaintiff's protected activity bolster, rather than undermine, Defendant's argument that its reason for discharging Plaintiff was not pretextual.

Therefore, Defendant's Motion for Summary Judgment as to Plaintiff's claim of retaliation is granted.

### IV. Conclusion

For the reasons stated above, the portions of Magistrate Judge Pitman's Amended Report and Recommendation to which no objections were made are adopted. Upon a *de novo* review of the portions of the Report and Recommendation to which objections were made, Defendant's Motion for Summary Judgment is GRANTED in its entirety.

SO ORDERED.

Dated:  March **30** , 2006
New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

30

SERVICE LIST:

*For the Plaintiff*:
Tricia Campbell
3349 Fish Ave.
Bronx, NY 10469

*For the Defendant*:
Christopher Reynolds, Esq.
Debra S. Mowray, Esq.
Jami Schultz, Esq.
Morgan, Lewis & Bockius LLP
101 Park Avenue
37th Floor
New York, NY 10178